# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 20-40870-CJP |
| DAVID J. SMITH, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## ORDER OVERRULING CHAPTER 13 TRUSTEE'S OBJECTION
## TO DEBTOR'S SECOND AMENDED CHAPTER 13 PLAN

The Chapter 13 trustee, Denise M. Pappalardo (the "Trustee"), objects to confirmation (Dkt. No. 111) (the "Objection") of the Second Amended Chapter 13 plan (Dkt. No. 102) (the "Plan") proposed by the debtor, David J. Smith (the "Debtor"). The Trustee raises three issues in the Objection as to why the Plan should not be confirmed: (1) the Trustee's inability to determine whether the Debtor is committing all of his disposable income to the Plan pursuant to 11 U.S.C. § 1325(b)(1)(B) because the Debtor had not provided certain documents to the Trustee as of the date of the Objection; (2) the Debtor's inclusion of a nonstandard provision in Part 8.3 of the Plan that dictates the timing of distributions to claimants, including the secured creditors in the case, which the Trustee asserts is in contravention of equal payment provision under 11 U.S.C. § 1325(a)(5)(B)(iii)(I); and (3) that the Debtor has not filed the Plan in good faith as required under 11 U.S.C. § 1325(a)(3).[1] The Debtor has responded to the Objection (Dkt. No. 114) (the "Response") generally denying the Trustee's allegations. At the hearing on the Objection, the Trustee withdrew the disposable income commitment basis of her Objection after reviewing information provided to her by the Debtor, so only the equal payment and good faith objections

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or the "Code").

1

under § 1325 remain. For the reasons that follow, and based on the circumstances of this case, the Objection is overruled.

I.      **Procedural History and Positions of the Parties**

Part 8.3 in the "Nonstandard Plan Provision" section of the Plan provides: "[p]ayments shall be made first to 11 U.S.C. § 507 priority claims with full satisfaction of a higher ranked priority class before any payment to a less priority, then to secured claims, and then to general unsecured claims." Plan, § 8.3. In addition to attorneys' fees of Debtor's counsel, Part 4, the "Priority Claims" section of the Plan, provides for payment of the priority claims of the Massachusetts Department of Revenue (the "MDOR") and the Internal Revenue Service (the "IRS").[2] The Debtor proposes to cure prepetition arrears of the secured claims of The Bank of

---

[2] Because the IRS's priority claim has been asserted jointly against the Debtor and his spouse, who is a debtor in her own Chapter 13 case (In re Diane M. Smith, Bankr. Case No. 18-41956-EDK) in which she also treats the IRS's claim, the Debtor includes the following additional provisions, in relevant part, regarding IRS's claim in Part 8.5 of the Plan:

> . . . The total amount of the IRS's unsecured priority claim being paid pursuant to the Debtor's Chapter 13 plan is $6,968.82.
>
> The remainder of the IRS's unsecured priority claim, in the amount of $35,954.65, is being paid pursuant to the confirmed Chapter 13 plan of the Debtor's spouse, Diane M. Smith in Case No. 18-41956 pending in the United States Bankruptcy Court for the District of Massachusetts for the following tax years and in the following amounts: (i) $7,753.27 for tax year 2015, (ii) $18,491.56 for tax year 2016, and (iii) $9,709.82 for tax year 2017 (collectively, the "IRS Joint Unsecured Priority Claims").
>
> The IRS Joint Unsecured Priority claims shall not be subject to the Chapter 13 discharge under 11 U.S.C. § 1328 in this Chapter 13 case unless and until they are paid in full by either the Debtor or the Debtor's spouse, Diane M. Smith. Nothing herein shall otherwise effect the dischargeability or nondischargability of any claim of the IRS under applicable law.
>
> . . .

Plan, § 8.5. In Diane Smith's case, the plan that the court confirmed on December 29, 2021 was unopposed and included the same provision at issue in this case: "Payments shall be made first to 11 U.S.C. § 507 priority claims with full satisfaction of a higher ranked priority class before any payment to a less priority, then to secured claims, and then to general unsecured claims." Postconfirmation Amended Plan, § 8.3 [Bankr. Case No. 18-41956 Dkt. No. 154]; Confirmation Ord. (Katz, J.) [Bankr. Case No. 18-

New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2007-6 (the "Mortgage Lender") and the MDOR through Part 3 of the Plan, which sets forth the treatment of secured claims. There is no distribution contemplated to unsecured creditors in Part 5 of the Plan.

The Trustee contends that Part 8.3 violates the "equal payments" requirement under § 1325(a)(5)(B)(iii)(I).[3] The effect of Part 8.3, if the Plan is confirmed, would be that the Trustee must distribute Plan payments made by the Debtor to priority claims allowed under § 507 in the order of priority established by that section (although not further specified, presumably, first, to the administrative fee claim of Debtor's counsel (§ 507(a)(2)) and, second, to the priority claims of the taxing authorities (§ 507(a)(8))) - ahead of payment to secured creditors. Likely, this is why the Trustee focuses on the equal payments provision of § 1325(a)(5)(B)(iii)(I), which provides with respect to each allowed secured claim provided for by a plan, as part of one of three alternatives required for confirmation of a plan, that if property is to be distributed by periodic payments, those payments must be in equal monthly installments. 11 U.S.C. §

---

41956 Dkt. No. 165].

[3] As the Court previously discussed in its decision in *In re Materne*, 640 B.R. 781 (Bankr. D. Mass. 2022):

> [Section] 1325(a) provides that the court shall confirm a Chapter 13 plan if that plan meets the requirements set out in that section. See 11 U.S.C. § 1325(a). With respect to each allowed secured claim "provided for by the plan," § 1325(a)(5) enumerates three alternative options, for a debtor proposing a plan, only one of which must be satisfied: (i) obtain the acceptance of the holder of the secured claim, § 1325(a)(5)(A), (ii) satisfy the conditions of "cramdown" by providing in the plan that the holder of the allowed secured claim will retain its lien and receive distributions under the plan having a present value equal to the amount of the allowed secured claim, § 1325(a)(5)(B), or (iii) surrender the property securing such claim to the holder, § 1325(a)(5)(C).

640 B.R. at 791.

3

1325(a)(5)(B)(iii)(I). The Trustee also requests, if the Debtor is permitted to direct the timing of distributions under the Plan, that the Debtor provide the Trustee with a "disbursement schedule as well as ranking the priority claims." Obj. ¶ 10.

The Debtor disputes that the distribution mechanism contemplated in Part 8.3 would result in unequal payments to creditors, stating it was more likely to result in equal payments than the common practice in this District for the Trustee to pay attorney fees over the first 12 months of a plan when provided in a confirmed plan[4] and that equal payments would be paid to the secured creditors, but that they would start later than at the time of confirmation. Resp. 2. The Debtor further contends that, even if the distributions resulting from application of Part 8.3 were unequal payments to the secured creditors, the Mortgage Lender has accepted the Plan by not objecting.[5] *See id*. The Debtor does not address the Trustee's bad faith allegations in any detail other than by responding "Denied." *Id*.

## II. Discussion

### A. Ordering of Distributions and Equal Payment Provision for Secured Claims

As one commentator has observed regarding ordering of payments in relation to priority claims:

> In contrast to distributions under § 726(a)(1) in a Chapter 7 case—priority claims are paid in the order found in § 507(a)—the Code does not specify any particular order for payment of priority claims in Chapter 13 cases. It has been held that if the plan provides for payment in the § 507(a) order, the plan will control.

---

[4] This Plan also includes the following provision that has not been objected to by the Trustee: "[t]he Trustee shall pay allowed administrative fees and expenses due attorney in the first 12 months of the plan or at such later date as approved by the Court." Plan § 8.3.

[5] The Debtor appears to focus on the Mortgage Lender in his response, even though there are two secured claims treated in Part 3.A.1 of the Plan and neither has objected to their treatment under the Plan.

Keith M. Lundin, Lundin On Chapter 13, § 73.4, at ¶ 14, LundinOnChapter13.com (last visited Oct. 4, 2022) (citing *In re Aldridge,* 335 B.R. 889, 892 (Bankr. S.D. Ala. 2005). The court in *Aldridge*, a pre-BAPCPA[6] case, ruled that, although in Chapter 7 priority claims must be paid in the order set forth in § 507 per § 726, Chapter 13 "requires only that the trustee's fee and any unpaid priority claim of the kind specified in § 507(a)[(2)[7]] must be paid [b]efore or at the time of each payment to creditors under the plan. . . . Section 1326 does not set forth any order of payment for the other priority claims." *Id.* (internal quotations and citation omitted and alteration referencing what is now subsection 2 of § 507(a) has been added).

Similarly, the Code does not provide that secured claims must be paid contemporaneously with priority claims and does not appear to expressly prohibit such a provision in a plan. It may also be the case that payments to be made to a secured creditor may be made in equal installments where a debtor makes those equal payments after administrative or priority claims have been satisfied if the plan so provides. Section 1326(b)(1) requires that fees of a Chapter 13 debtor's attorney are to be paid "[b]efore or at the time of each payment to creditors under the plan" and does not appear to conflict with requirements for treatment of allowed secured claims under § 1326(a)(5), although I do not reach this issue because the secured creditors in this case are deemed to have accepted any delay in payments proposed under

---

[6] Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA).

[7] While under the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) the priority scheme has changed and prepetition domestic support obligations are now accorded a first priority position ahead of administrative expense claims, and *Aldridge* was decided based on the Code before the BAPCPA amendments, the underlying principle permitting concurrent payments of priority claims with claims of a lower priority appears to remain unchanged. "Prior to the BAPCPA amendment, § 1326(b)(1) provided protection for claims which were entitled to priority pursuant to § 507(a)(1). The 2005 Amendments changed the reference to § 507(a)(2). It appears that Congress was well aware that when it gave child support claims priority pursuant to § 507(a)(1)(A) and (B), it nevertheless wanted to protect the payment of attorney's fees in cases under Chapter 13." *In re Vinnie*, 345 B.R. 386, 389 (Bankr. M.D. Ala. 2006).

5

the Plan . *See* 11 U.S.C. § 1325(a)(5)(A).

Section 1325(a)(5)(A) permits confirmation of a plan where a secured creditor has accepted the plan. In the context of confirmation of a Chapter 13 plan, where a secured creditor does not object to the treatment of its claim proposed by the plan, that secured creditor is deemed to have accepted the plan. *See, e.g., Wachovia Dealer Servs. v. Jones (In re Jones)*, 530 F.3d 1284, 1291 (10th Cir. 2008) (stating that "the failure to object constitutes acceptance of the plan"); *In re Szostek*, 886 F.2d 1405, 1412–13 (3d Cir.1989) (concluding that § 1325(a)(5) is satisfied if a secured creditor has accepted the plan by failing to object); *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 444 (B.A.P. 1st Cir. 2009) (overruling the bankruptcy court and "adopt[ing] the Third Circuit's view that acceptance may occur upon a secured creditor's failure to file a timely objection to a chapter 13 plan"); *Scotiabank de Puerto Rico v. Lorenzo (In re Lorenzo)*, Case No. 15-011, 2015 WL 4537792, at *6 (B.A.P. 1st Cir. July 24, 2015) (holding that "failure to prosecute its objection constituted acceptance of the plan for purposes of § 1325(a)(5)(A)"); *Bronitsky v. Bea (In re Bea)*, 533 B.R. 283, 290 (B.A.P. 9th Cir. 2015) (affirming bankruptcy court's order overruling trustee's objection and determining that the failure of secured creditors' to object to the delay in commencement of adequate protection payments under § 1325(a)(5)(B)(iii)(II) to them under the plan constituted acceptance of such treatment for purposes of § 1325(a)(5)(A)); *Austin v. Bankowski*, 519 B.R. 559, 563 (D. Mass. 2014) (concluding that "secured creditor's failure to object to a Chapter 13 plan raises the presumption of acceptance"). *But see, e.g., In re Shelton*, 592 B.R. 193, 213 (Bankr. N.D. Ill. 2018) (holding that "when a plan provision is proposed in clear contravention of both the express language and purpose of section 1325(a)(5)(B)(iii)(I) for the sole reason to manipulate payments to parties to benefit a debtor's attorney, holding a creditor to a higher standard of actual, express

6

acceptance is appropriate"). As summarized by a chapter 13 commentator, "[t]here is a long line of cases acknowledging that affirmative acceptance and acceptance by silence bind lienholders to confirmed Chapter 13 plans that provide for payment of the allowed secured claim. When a creditor fails to timely object to an unfavorable plan, the fundamental issue is notice: did the creditor have adequate information about the proposed treatment under the plan in time to object to confirmation?" Lundin On Chapter 13, § 74.4, at ¶ 2 (citations omitted); *see also Austin v. Bankowski*, 519 B.R. at 564–65 (determining that because "record undisputedly demonstrates that the Mortgagee received proper and adequate notice and service, . . . thereby raising the presumption that it has accepted the proposed treatment of its claim . . . . Further, there is nothing on the record which gives the Court pause in accepting this presumption, and thus this Court concludes that the Mortgagee has accepted the proposed treatment of its claim; accordingly the confirmation requirements with respect to Section 1325(a)(5) have been met." (citations omitted)). In this case, it appears from the record that the secured creditors received notice of the Plan and did not object, raising the presumption of acceptance, which has not otherwise been rebutted in the record. As such, focusing specifically on the Trustee's objection as it relates to treatment of the claims of the secured creditors and limited to the facts of this case, I overrule the Objection because the potentially affected secured creditors have accepted the plan as contemplated by § 1325(a)(5).

**B. Good Faith**

The Trustee also asserts that the Plan may not be confirmed because it is not filed in good faith as required by § 1325(a)(3). Under § 1325(a)(3), it is the debtor's burden of proof to demonstrate a plan is proposed in good faith. *See, e.g., In re Virden*, 279 B.R. 401, 407 (Bankr. D. Mass. 2002) (determining that "[u]nder Section 1307(c) [regarding dismissal of a petition as

7

not having been filed in good faith], the objecting creditor bears the burden of proof, while under Section 1325(a)(3), it is the debtor."). The phrase "good faith" is undefined in the Code and "the legislative history provides little insight into its meaning." *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 81 (1st Cir. 2012). The United States Court of Appeals for the First Circuit has concluded that a "totality of the circumstances approach to adjudicating good faith should apply . . . to inquiries under section 1325" but the test "cannot be reduced to a mechanical checklist." *Id.* at 82.

The Trustee asserts that the proposed distribution scheme improperly leaves unsecured creditors in a precarious position, citing *In re Pearson*, 398 B.R. 97 (Bankr. M.D. Ga. 2008). In that case, the Chapter 13 debtors proposed a plan providing for accelerated payments to secured claims in excess of the amounts required from the debtors under their contracts with those creditors, whereby the secured claims were to be paid in full prior to any distributions to unsecured creditors. *See In re Pearson*, 398 B.R. at 102. The court recognized, however, that "[t]his procedure is permitted in some jurisdictions" and declined the Chapter 13 trustee's invitation in that case to rule "'as a matter of law' that a Chapter 13 plan is not proposed in good faith if the plan proposes to accelerate the payments on secured claims or proposes to pay in full the secured claims before distributions are made on unsecured claims." *Id.* at 102–03. In examining the totality of circumstances, however, the court sustained the trustee's objection because:

> [The] Debtors [have] shown no unusual or exceptional circumstances that warrant preferring the secured creditors over the unsecured creditors. There is no evidence that the accelerated payment of secured claims is reasonably necessary for the support of Debtors or their [dependents]. The accelerated payment benefits Debtors to the unfair detriment of their unsecured creditors. It gives Debtors a "head start" rather than a "fresh start." The Court is persuaded that Debtors are not sincerely making their best efforts to pay their debts and that the Chapter 13 plan is not proposed in good faith.

8

*Id*. at 105.

The Trustee argues that this case is similar to *Pearson* because "there is nothing to prevent the Debtor from converting the case to Chapter 7 or seeking a hardship discharge pursuant § 1328(b) once administrative and secured claims are paid in full."  Obj. ¶ 11.  She contends that the Court should not confirm the plan because on these facts the Debtor has not meet his burden to demonstrate good faith.  *See generally, Sullivan v. Breslin (In re Sullivan)*, 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005) ("adopt[ing] the totality of the circumstances test and conclude that the obligation of good faith is imposed on the debtor at two stages of a Chapter 13 proceeding. First, a debtor must file the Chapter 13 petition in good faith. Second, the debtor must file the Chapter 13 plan in good faith" (citations omitted)); *In re Virden*, 279 B.R. at 409 (finding that "[t]he bottom line when assessing the debtor's good faith is whether the debtor is attempting to thwart his creditors or is making an honest effort to repay them to the best of his ability. Is the debtor motivated by a desire not to pay creditors rather than inability to pay?").

In this case, where the plan does not contemplate any payments to unsecured creditors based on the Debtor's disposable income and there is no objection by the affected secured creditors, this argument is less compelling.  If the Debtor's income were to significantly increase or he were to receive a windfall during the Plan term, these issues could be addressed in evaluating an amended plan.  With respect to concerns about a future undue hardship discharge request, the Debtor would have the burden to demonstrate, among other things, that his failure to complete his payments "is due to circumstances for which the debtor should not justly be held accountable."  11 U.S.C. § 1328(b).  While I appreciate the potential administrative burden and potential for abuse of a "directed payment" provision such as provided in Part 8.3, this case does not present elements of lack of good faith with respect to the Plan.  Where the basis of the

9

good faith objection is a distribution scheme that has been determined to be permissible and concerns about the effect on unsecured creditors is hypothetical because no distribution to them is contemplated, I overrule the Objection as to good faith as well.

### III.    Conclusion

For these reasons (limited to the facts of this case - where affected secured creditors have not objected to confirmation), I overrule the Objection. The Trustee shall file a proposed form of confirmation order promptly after Debtor's counsel provides her with an acceptable distribution schedule regarding the priority and amounts of payments on account of priority claims that may be incorporated by reference in that proposed confirmation order. If the Trustee is not satisfied with the distribution schedule provided by Debtor's counsel, the Trustee may file a motion seeking instruction.

Dated: October 5, 2022

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge